PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3586
_____

NAKIA WILLIAM GARRUS,

Appellant

v.

*SECRETARY OF THE PENNSYLVANIA
DEPARTMENT OF CORRECTIONS;
THE DISTRICT ATTORNEY OF THE
COUNTY OF PHILADELPHIA;
THE ATTORNEY GENERAL FOR THE
STATE OF PENNSYLVANIA

*Pursuant to Rule 43(c), Fed. R. App. P.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-07-cv-00187)
District Judge:  Honorable Timothy J. Savage
_____

Argued En Banc May 30, 2012

Before: McKEE, *Chief Judge*, SLOVITER, SCIRICA,
RENDELL, AMBRO, FUENTES, SMITH,
FISHER, CHAGARES, JORDAN, HARDIMAN,
GREENAWAY, JR. and VANASKIE, *Circuit Judges*.

(Filed: September 21, 2012)

David R. Fine
Anthony R. Holtzman (ARGUED)
K&L Gates
17 North Second Street, 18th Floor
Harrisburg, PA 17101
        *Counsel for Appellant*

Thomas W. Dolgenos (ARGUED)
David C. Glebe
Philadelphia County Office of District Attorney
3 South Penn Square
Philadelphia, PA 19107
        *Counsel for the Secretary of the*
        *Pennsylvania Department of*
        *Corrections, the District Attorney of the*
        *County of Philadelphia and the Attorney*
        *General for the State of Pennsylvania*

Robert M. Wolff
Pennsylvania Department of Corrections
Office of Chief Counsel
1920 Technology Parkway
Mechanicsburg, PA 17050
        *Counsel for the Secretary of the*

*Pennsylvania Department of
Corrections*

Robert M. Falin
Montgomery County Office of District Attorney
P.O. Box 311
Norristown, PA  19404
　　　*Counsel for the District Attorney of the
　　　County of Philadelphia and the Attorney
　　　General for the State of Pennsylvania*

————

OPINION OF THE COURT
————

FISHER, *Circuit Judge*, joined by McKEE, *Chief Judge*, and SLOVITER, SCIRICA, RENDELL, AMBRO, FUENTES, SMITH, and JORDAN, *Circuit Judges*.

　　　William Garrus ("Garrus"), a Pennsylvania state prisoner, seeks federal habeas relief under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Garrus was found guilty in state court of voluntary manslaughter in 2001.  At sentencing, the judge increased his sentence beyond the statutory maximum based on 42 Pa. Cons. Stat. § 9714, Pennsylvania's "three strikes" law.  In order to do so, the judge made a judicial finding that Garrus had previously been convicted of burglarizing an occupied building, when, in fact, he had only pled guilty to, and been convicted of, second degree burglary (which, under Pennsylvania law, necessarily requires that the

3

burglarized building was unoccupied).  In the habeas petition now before us, Garrus argues that this judicial factfinding violated the rule of *Apprendi v. New Jersey*, requiring that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. 466, 490 (2000).  The District Court denied the petition on the basis that the highest state court determination upholding Garrus's sentence was not contrary to or an unreasonable application of clearly established Federal law.

Key to our determination is a single question: whether, pursuant to AEDPA, the state court unreasonably applied *Apprendi* by allowing Garrus to be sentenced beyond the statutory maximum based on a judicial finding that Garrus burglarized an occupied building, despite his plea to the contrary.[1]  For the reasons set forth below, we hold that the state court determination upholding Garrus's sentence was objectively unreasonable, and that Garrus is entitled to habeas relief.  Accordingly, we will reverse the order of the District Court.

---

[1] We agree with Judge Hardiman that the order for rehearing en banc misstated the issue.  Dissenting Op. of Hardiman, J. at Part I; Order at 1-2, *Garrus v. Secretary of the Pa. Dep't of Corr.*, No. 09-3586 (3d. Cir. Feb. 24, 2012).  Nonetheless, the parties have briefed and argued, and we now analyze, the proper question in this case, which is stated above.

4

## I.

On February 10, 2000, Garrus was at the home of his girlfriend, Toi Bryant, with whom he has a daughter, when Bryant's ex-boyfriend, Charles Goode, showed up at the residence. Shortly after Goode arrived, an argument ensued between him and Bryant involving their child. As the argument escalated, Garrus took his daughter upstairs. He later returned downstairs to the kitchen where Goode and Bryant were arguing. After Garrus and Goode exchanged some heated words, a fight broke out between the two men. Garrus picked up a kitchen knife and stabbed Goode several times in the chest area. Goode broke away from Garrus and ran upstairs to the bathroom. Garrus left the home. When police arrived, both Goode and Bryant identified Garrus as the attacker. Goode later died from his injuries.

Following a jury trial in the Philadelphia County Court of Common Pleas, Garrus was convicted on March 9, 2001, of voluntary manslaughter and possession of an instrument of crime. A conviction for voluntary manslaughter carries a maximum sentence of 20 years of imprisonment. 18 Pa. Cons. Stat. §§ 1103, 2503(c). However, the Commonwealth of Pennsylvania (the "Commonwealth") notified the trial court that it would seek a sentencing enhancement under Pennsylvania's "three strikes" law, which requires a judge to sentence a defendant to a minimum term of 25 years' imprisonment (and a maximum of up to life imprisonment) if the defendant was previously convicted of two or more separate "crimes of violence." 42 Pa. Cons. Stat. § 9714. "Crimes of violence" may include *first* degree burglary (defined as, *inter alia*, burglary of an occupied structure), but

5

do not include *second* degree burglary (defined as, *inter alia*, burglary of an unoccupied structure).[2]

On April 30, 2001, the trial court held the first of two sentencing hearings. The Commonwealth offered evidence

---

[2] A burglary is only a "crime of violence" when it is "burglary of a structure adapted for overnight accommodation in which at the time of the offense any person is present[.]" 42 Pa. Cons. Stat. § 9714. Under Pennsylvania law, second-degree and first-degree burglary are mutually exclusive. Second-degree burglary is burglary that occurs where the structure "is not adapted for overnight accommodation and . . . no individual is present at the time of entry[.]" 18 Pa. Cons. Stat. § 3502(c)(2). First-degree burglary, on the other hand, occurs where the structure *is* adapted for overnight accommodation, or if an individual is present at the time of entry. 18 Pa. Cons. Stat. § 3502. By definition, then, first-degree burglary that includes both factors (structure adapted for overnight accommodation and an individual present) is a "crime of violence," but second-degree burglary is not a "crime of violence." *See Commonwealth v. Ausberry*, 891 A.2d 752, 756 n.3 (Pa. Super. Ct. 2006) ("[T]he definition of a crime of violence . . . corresponds to the definition of first degree burglary as set forth in section 3502(c)(1) and 3502(c)(2)." (quoting *Commonwealth v. Guilford*, 861 A.2d 365, 375 (Pa. Super. Ct. 2004))); *Guilford*, 861 A.2d at 375 ("[T]he section 9714(g) definition of burglary as a crime of violence corresponds to the definition of burglary as a first degree felony," and thus, second-degree burglary "is not a crime of violence pursuant to section 9714(g).").

6

that Garrus had three prior convictions for "crimes of violence:" (1) a January 1995 conviction for first-degree robbery; (2) a February 1995 conviction for first-degree robbery; and (3) a February 1997 plea and conviction for second-degree burglary. The Commonwealth argued that although Garrus had only pled guilty to second degree burglary in 1997, the trial court should consider a police report and witness statements regarding that burglary to find instead that the building Garrus had burglarized in 1997 was occupied. On the basis of the police report and witness statements, the trial court found at the second sentencing hearing on May 8, 2001, that Garrus's prior 1997 conviction for second-degree burglary constituted a crime of violence under § 9714. *Commonwealth v. Garrus*, June Term 2000 No. 0092, slip op. at 17 (Phila. Cnty. Ct. Com. Pl. Jan. 16, 2002). Additionally, it found that the two 1995 robberies constituted two separate crimes of violence, and that his conviction for voluntary manslaughter was his fourth crime of violence. *Id.* The trial court sentenced Garrus to a term of 25 to 50 years' imprisonment. *Id.*

Garrus appealed his conviction and sentence to the Superior Court of Pennsylvania.[3] He argued that, by definition, his 1997 second-degree burglary conviction did not constitute a "crime of violence" under Pennsylvania's "three strikes" law. The Superior Court of Pennsylvania

---

[3] On appeal in this Court, Garrus challenges only his sentence under Pennsylvania's "three strikes" law. Accordingly, we refer solely to the prior resolution of this claim.

7

adopted the trial court's opinion in its entirety. *Commonwealth v. Garrus*, No. 2592 EDA 2001 (Pa. Super. Ct. Oct. 18, 2002). The Supreme Court of Pennsylvania granted Garrus's petition seeking *allocatur* on the sole issue of Garrus's sentence, *Commonwealth v. Garrus*, 817 A.2d 455 (Pa. 2003), but later dismissed the appeal in September 2003 as having been improvidently granted. *Commonwealth v. Garrus*, 832 A.2d 1063 (Pa. 2003).

In April 2004, Garrus filed a *pro se* petition for post-conviction relief in the Philadelphia County Court of Common Pleas, pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. § 9541 *et seq.*, challenging his sentence. He argued that the trial court, at sentencing, violated his constitutional rights, as articulated in *Apprendi*, 530 U.S. at 476, by relying on the police report and victim statement to determine that his 1997 burglary conviction was a "crime of violence" under Pennsylvania's "three strikes" law. Garrus also asserted that state law required his two 1995 robbery convictions to be considered as one "crime of violence" under the "three strikes" law. As a result, Garrus claimed that he had, at most, one prior conviction for a "crime of violence," rendering him ineligible for the 25-year mandatory minimum sentence he had received.

Garrus's PCRA petition was dismissed in February 2005. A month later, the Supreme Court rendered a decision in *Shepard v. United States*, 544 U.S. 13 (2005), in which the Court held that a sentencing court is not permitted to consider police reports in determining whether a prior conviction constituted a "violent crime" under the Armed Career

8

Criminal Act ("ACCA"), 18 U.S.C. § 924, a federal recidivism statute. *Id.* at 16, 26.

On appeal from the denial of his PCRA petition, Garrus argued that the sentencing court's consideration of the police report and victim statement, with respect to his 1997 burglary conviction, violated his rights under *Apprendi* and *Shepard*, and he again argued that his two 1995 robbery convictions constituted one "crime of violence." The Superior Court of Pennsylvania affirmed the denial of his PCRA petition. *Commonwealth v. Garrus*, No. 961 EDA 2005 (Pa. Super. Ct. Apr. 18, 2006). In its opinion, the Superior Court acknowledged that *Apprendi* requires that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Id.* at 8-9 (quoting *Apprendi*, 530 U.S. at 476). However, it determined that the prior conviction exception permitted the sentencing judge to find that Garrus had burglarized an occupied building despite his plea to the contrary, and to sentence him beyond the statutory maximum accordingly. The Superior Court also determined that the Supreme Court's decision in *Shepard* did not affect the validity of the prior conviction exception established in *Apprendi*. Finally, on the basis that the 1997 burglary constituted a "crime of violence," the Superior Court declined to reach the issue of whether the two 1995 robberies constituted separate crimes. The Supreme Court of Pennsylvania denied Garrus's petition seeking further appellate review. *Commonwealth v. Garrus*, 906 A.2d 639 (Pa. Aug. 29, 2006) (table).

9

On January 16, 2007, Garrus filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 2254. Garrus raised the same challenges to both his 1997 burglary conviction and the two 1995 robbery convictions. The Magistrate Judge denied Garrus's petition, *Garrus v. Mazurkiewicz*, No. 07-187 (E.D. Pa. May 28, 2008), and concluded that it was precluded from granting federal habeas relief because the sentencing court's consideration of the police report and victim statement in determining whether Garrus had two prior convictions for crimes of violence under Pennsylvania's "three strikes" law was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. *Id*. at 38-39.

The Magistrate Judge also concluded that Garrus's argument that his two 1995 robbery convictions should be considered as one for purposes of the recidivism statute was therefore moot, as Garrus still had at least two prior convictions for crimes of violence – the 1997 burglary conviction and at least one of the 1995 robbery convictions. In any event, the Magistrate Judge reasoned, Garrus's challenge to the 1995 robbery convictions involved an interpretation of state law and could not be considered by federal courts in a habeas petition.

Nevertheless, the Magistrate Judge recommended that the District Court issue a certificate of appealability to this Court, limited to the issue involving the 1997 burglary conviction. The District Court adopted the Magistrate Judge's recommendation, with the exception that it rejected the Magistrate Judge's determination that sufficient grounds

existed to issue a certificate of appealability. *Garrus v. Johnson*, No. 07-187 (E.D. Pa. Aug. 18, 2009). Garrus appealed, and on March 12, 2010, we granted a certificate of appealability to consider the issue of whether the state sentencing court violated Garrus's constitutional rights by labeling the 1997 second-degree burglary conviction a "crime of violence" for purposes of applying Pennsylvania's "three strikes" law.

## II.

The District Court had jurisdiction to consider Garrus's habeas petition pursuant to 28 U.S.C. § 2254, as the claim raised in the petition has been properly exhausted in the state courts. *See Alston v. Redman*, 34 F.3d 1237, 1242 (3d Cir. 1994).[4] We have jurisdiction to review the District

---

[4] Our review of Garrus's claim is not barred by the adequate and independent state ground doctrine. *See Harris v. Reed*, 489 U.S. 255, 262 (1989). In its PCRA opinion, the Pennsylvania Superior Court noted that Garrus might have "three strikes" against him even without counting the burglary charge as a "crime of violence," but it failed to clearly decide the issue, relying instead on the finding that the burglary charge comprised one of the three necessary strikes. *Commonwealth v. Garrus*, No. 961 EDA 2005, slip op. at 10-11 (Pa. Super. Ct. Apr. 18, 2006). That opinion was the last state court decision on the merits, *see Greene v. Fisher*, 132 S. Ct. 38, 43-45 (2011), and because it did not "clearly express[] . . . reliance on an adequate and independent state-law ground, we may address [the] federal issue considered by the state court." *Harris*, 489 U.S. at 263.

Court's judgment pursuant to 28 U.S.C. §§ 1291 and 2253. We exercise *de novo* review over a District Court's denial of habeas relief, *Vega v. United States*, 493 F.3d 310, 314 (3d Cir. 2007), and apply the highly deferential AEDPA standard, which, in this case, precludes us from granting habeas relief unless the challenged state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law[.]" 28 U.S.C. § 2254(d)(1).

## III.

Core to a criminal defendant's constitutional rights is the principle that "criminal convictions [must] rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *United States v. Gaudin,* 515 U.S. 506, 510 (1995); *see also In re Winship*, 397 U.S. 358, 364 (1970). In *Apprendi*, the Supreme Court held that this same right applies to a sentencing factor that would increase a defendant's sentence beyond the statutory maximum because, like an element of a separate crime, such a sentencing factor results in a higher sentence than that which could be prescribed for the original crime. 530 U.S. at 476, 490. Thus, there is no "principled basis" for treating such a sentencing factor differently than an element of a crime. *Id*. at 476. The exception is that a judge can increase the sentence beyond the statutory maximum based on "the fact of a prior conviction" because a prior conviction has already been established through procedural safeguards. *Id*. at 488-90; *Jones v. United States*, 526 U.S. 227, 249 (1999) ("[A] prior conviction must itself have been established through

12

procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees.").

These precepts are "rooted in longstanding common-law practice[.]" *Cunningham v. California*, 549 U.S. 270, 281 (2007). *Apprendi* recounted their historical context, noting that early on in our history, judges had "very little explicit discretion in sentencing." 530 U.S. at 479. Any "circumstances mandating a particular punishment" had to be charged to the jury in the indictment; there was "[no] distinction between an 'element' of a felony offense and a 'sentencing factor[.]'" *Id.* at 478, 480. In the 19th century, this idea began to shift, "from statutes providing fixed-term sentences to those providing judges discretion within a permissible range[.]" *Id.* at 481. Crucially, this shift "has been regularly accompanied by the qualification that [such judicial] discretion was bound by the range of sentencing options prescribed by the legislature." *Id.*

By the late 20th century, the Supreme Court began to address state laws that increased a defendant's punishment based on factors found at sentencing, rather than based on factors found at trial. In *McMillan v. Pennsylvania*, 477 U.S. 79 (1986), the Supreme Court, "for the first time, coined the term 'sentencing factor' to refer to a fact that was not found by a jury but that could affect the sentence imposed by the judge." *Apprendi*, 530 U.S. at 485 (construing *McMillan*). Consistent with longstanding constitutional principles, *McMillan* held that a "sentencing factor" must at times be found by a jury because "(1) constitutional limits exist to States' authority to define away facts necessary to constitute a criminal offense, and (2) . . . a state scheme that keeps from

13

the jury facts that 'expos[e] [defendants] to greater or additional punishment,' may raise serious constitutional concern[s]." *Apprendi*, 530 U.S. at 486 (quoting *McMillan*, 477 U.S. at 85-88) (internal citations omitted).

A decade later, the Supreme Court decided *Almendarez-Torres v. United States*, 523 U.S. 224, 242-47 (1998), a case in which the defendant was convicted for his presence in the United States after being deported, a violation which normally carried a maximum of two years' imprisonment. 523 U.S. at 227. Prior to his initial deportation, Almendarez-Torres was convicted of three aggravated felonies, and according to the sentencing statute, where the original deportation had occurred subsequent to an aggravated felony, the court could impose a maximum sentence of up to twenty years' imprisonment. *Id*. at 227, 229. Almendarez-Torres argued that he could not be subject to more than two years' imprisonment, because his indictment had not mentioned his earlier aggravated felony convictions. *Id*. at 227. Importantly, there was no contention that the defendant had *not* been convicted of the three aggravated felonies, but only that the fact of his prior convictions should have been included in the indictment and charged to the jury. *Id*. Thus, Almendarez-Torres had earlier been convicted of the facts necessary for the sentencing enhancement, "pursuant to proceedings with substantial procedural safeguards of their own[.]" *Apprendi*, 530 U.S. at 488. In other words, by judicially finding that Almendarez-Torres's three prior convictions existed, the sentencing judge did not "change a pre-existing definition of a well-established crime, nor . . . 'evade' the Constitution, either by 'presuming' guilt or

14

'restructuring' the elements of an offense." *Almendarez-Torres*, 523 U.S. at 246.

The Supreme Court found that the fact of Almendarez-Torres's prior convictions did not have to be charged to the jury because the constitutional limitations articulated in *McMillan* did not apply.[5] *Almendarez-Torres*, 523 U.S. at 228, 242-43. As the Supreme Court later explained in *Apprendi*: "[b]oth the certainty that procedural safeguards attached to any 'fact' of prior conviction, and the reality that Almendarez-Torres did not challenge the accuracy of that 'fact' in his case, mitigated the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a 'fact' increasing punishment beyond the maximum of the statutory range." 530 U.S. at 488.

A year after *Almendarez-Torres*, the Supreme Court explained that *Almendarez-Torres*'s recidivism exception was permitted because "a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees." *Jones*, 526 U.S. at 249. In *Jones*, the trial court gave the defendant a sentence beyond the statutory maximum based on a judicial finding

---

[5] Judge Greenaway asserts that the *Almendarez-Torres* rule "remains . . . amorphous and undefined[.]" Dissenting Op. of Greenaway, J. at Part III. However, as explained above, even in *Almendarez-Torres* itself, the Supreme Court did not allow *carte blanche* factfinding related to recidivism. 523 U.S. at 242-46. Thus, the holding of *Almendarez-Torres* has never been as broad as Judge Greenaway suggests.

15

that the carjacking offense he was convicted of involved "serious bodily injury." *Id.* at 230-31. The Supreme Court found that the carjacking statute required a jury, rather than a judge, to determine whether the crime involved "serious bodily injury," citing "grave" constitutional questions that would arise if the statute were to be interpreted otherwise. *Id.* at 231, 239. Although *Jones* did not actually reach the constitutional issue, its explanation of *Almendarez-Torres* and its constitutional discussion were significant, especially given that *Apprendi* explicitly "confirm[ed] the opinion . . . expressed in *Jones*[,]" 530 U.S. at 490, that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." 530 U.S. at 476 (quoting *Jones*, 526 U.S. at 243 n.6).

Against this historical backdrop, the Supreme Court decided *Apprendi*, where a defendant pled guilty to unlawful possession of a weapon, a second-degree offense punishable by up to ten years' imprisonment. Despite the defendant's plea and conviction for a second-degree offense, the trial court sentenced him to twelve years' imprisonment, a "punishment identical to that . . . provide[d] for crimes of the first degree," based on a judicial finding pursuant to a New Jersey hate crime sentencing enhancement, "that the defendant's 'purpose' for unlawfully possessing the weapon was 'to intimidate' his victim on the basis of a particular characteristic the victim possessed." 530 U.S. at 468-69, 471, 491. The *Apprendi* Court began by stating that "[a]t stake in

this case are constitutional protections of surpassing importance: the proscription of any deprivation of liberty without 'due process of law,' Amdt. 14, and the guarantee that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury[.]'" 530 U.S. at 476-77. It then discussed several centuries of precedent, summarizing that a criminal defendant may not be "expose[d] . . . to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone." *Id*. at 482-83.

*Apprendi* explained that *Almendarez-Torres* was "at best an exceptional departure from . . . historic practice" and a "limited" and "narrow" exception based on "unique facts[.]" *Id*. at 487, 488 n.14, 489-90. Twice in its opinion, the *Apprendi* Court emphasized that *Almendarez-Torres* was different because "Almendarez-Torres had admitted the three earlier convictions for aggravated felonies[,]" and those prior convictions "had been entered pursuant to proceedings with substantial procedural safeguards of their own[.]" *Id*. at 488; *see also id*. (reiterating the same points). Thus, "no question concerning the right to a jury trial or the standard of proof that would apply to a contested issue of fact was before the Court." *Id*.

Having explained the historical principles and the *Almendarez-Torres* exception, the *Apprendi* Court summarized the law as follows, in the now-famous *Apprendi* rule:

> "[O]ur reexamination of our cases in this area,
> and of the history upon which they rely,

17

confirms the opinion that we expressed in *Jones*. Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in that case: '[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.'"

*Id*. at 490 (quoting *Jones*, 526 U.S. at 252-53 (Stevens, J., concurring); citing *id.* at 253 (Scalia, J., concurring)). Applying this newly articulated rule, the *Apprendi* court ruled that it was unconstitutional for the sentencing judge to increase Apprendi's sentence beyond the statutory maximum based on a judicial finding that the crime to which Apprendi pled guilty constituted a hate crime. In doing so, it compared *Almendarez-Torres,* reiterating that: "there is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and allowing the judge to find the required fact under a lesser standard of proof." *Apprendi*, 530 U.S. at 496.

18

## IV.

Based on these constitutional principles, Garrus requests habeas relief under AEDPA. Specifically, he claims that the trial court violated his Sixth Amendment and Due Process rights by finding that his prior 1997 conviction constituted a "crime of violence" and argues that the state appellate court decisions affirming that finding were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" in *Apprendi*. *See* 28 U.S.C. § 2254(d)(1).

AEDPA "'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" *Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011) (quoting *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)). We must use habeas corpus as a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). Thus, we may grant habeas relief under AEDPA only if the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,]" or "resulted in a decision that was based on an unreasonable

19

determination of the facts in light of the evidence presented in the State court proceeding."[6]  28 U.S.C. § 2254(d).

Because the state court identified and relied on the correct governing legal rule established by *Apprendi*, we must apply AEDPA's "unreasonable application" standard.[7]  *See Williams v. Taylor*, 529 U.S. 362, 407-08 (2000).  Under AEDPA's "unreasonable application" standard, we "may not issue the writ [if we merely] conclude[] . . . that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Id*. at 411.  "Rather, that application must be 'objectively unreasonable.'"  *Renico*, 130 S. Ct. at 1862 (quoting *Williams*, 529 U.S. at 409).  In other

---

[6] Judge Hardiman computes the frequent rate at which the Supreme Court has reversed habeas decisions of the Courts of Appeals based on failure to afford appropriate deference to state court judgments.  Dissenting Op. of Hardiman, J. at Part I.  Such statistics cannot dispose of the instant case, especially in light of the Supreme Court's recent reminder that "[j]udges must be vigilant and *independent* in reviewing petitions for the writ[.]"  *Harrington*, 131 S. Ct. at 780 (emphasis added).

[7] We consider the last state court adjudication on the merits, *Greene*, 132 S. Ct. at 44-45, which was the Pennsylvania Superior Court's PCRA decision, found at *Commonwealth v. Garrus*, No. 961 EDA 2005 (Pa. Super. Ct. Apr. 18, 2006).  *See Greene*, 132 S. Ct. at 43-45 (Pennsylvania Supreme Court's denial of petition for appeal is not considered an adjudication on the merits).

words, we must consider whether the state court's "determination can[] be reconciled with *any* reasonable application of the controlling standard[.]" *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007) (emphasis added). Garrus must show that "the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786-87.

This case turns on the meaning of the "unreasonable application" standard. Garrus argues that the state court unreasonably applied *Apprendi* and its prior conviction exception by permitting the trial court to determine at sentencing that Garrus's prior 1997 conviction for burglarizing an unoccupied building (second-degree burglary) actually involved burglarizing an occupied building. In response, the Commonwealth argues that Garrus cannot meet his burden of proving that the state court's application of *Apprendi* was objectively unreasonable because neither *Apprendi* nor any case since has explicitly defined the scope of "the fact of a prior conviction" exception. However, our determination is not dependent on a fully delineated interpretation or application of "the fact of a prior conviction" exception, only a reasonable one. *Panetti*, 551 U.S. at 953 ("That the standard is stated in general terms does not mean the application was reasonable."). The AEDPA standard is not so "myopic" nor "constrained" that it requires the full scope of all clearly established laws to be precisely defined. *Jamison v. Klem*, 544 F.3d 266, 273 (3d Cir. 2008); *see also id*. (noting that if a Supreme Court decision must precisely resolve a given issue under AEDPA, only the "contrary to"

21

standard would exist, and the "unreasonable application" standard would be rendered meaningless). Rather, AEDPA requires that if a clearly established rule or principle is stated, however general, state courts must adhere to *a* reasonable application of that rule.[8]  *Panetti*, 551 U.S. at 953.

---

[8] Our dissenting colleagues appear to agree that the focus of our inquiry should be on the "unreasonable application" prong of AEDPA.  Dissenting Op. of Greenaway, J. at Part I; Dissenting Op. of Hardiman, J. at Part I.  Judge Greenaway also concedes that "*Apprendi* is at the forefront of our inquiry," and that *Apprendi* limited and narrowed *Almendarez-Torres*.  Dissenting Op. of Greenaway, J. at Part II.  At the same time, Judges Greenaway and Hardiman fault us for not identifying a case "expounding on the contours of the amorphous prior-conviction exception." *Id.* at ¶ 2; Dissenting Op. of Hardiman, J. at Part I.

AEDPA, however, does not require clearly established federal law to be further elucidated by additional precedent before an application of that law may be unreasonable.  *See Panetti*, 551 U.S. at 953 ("AEDPA does not 'require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied.'" (quoting *Carey v. Musladin*, 549 U.S. 70, 81 (2006))).  Instead, under AEDPA, "even a general standard may be applied in an unreasonable manner." *Id.* (citing *Williams*, 529 U.S. 362).  Thus, our task is to review the Pennsylvania Superior Court's application of *Apprendi*, the clearly established federal law we do have, to Garrus's claim.

*Apprendi* clearly requires that any fact "other than the fact of a prior conviction" must be submitted to a jury if it will increase the penalty beyond the statutory maximum. 530 U.S. at 490. Under AEDPA there is undoubtedly a broad spectrum of reasonable applications of this rule, but a fact that actually defies and contradicts a prior conviction falls squarely outside the spectrum of reasonable interpretations. *Cf. Wilson v. Knowles*, 638 F.3d 1213, 1215 (9th Cir. 2011) ("Courts may reasonably disagree about some of the precise boundaries of the exception. . . . But that does not mean that *Apprendi* is amorphous. . . . The judge's fact-finding seven years after the 1993 conviction extended beyond any reasonable interpretation of the prior conviction exception."). We can find no reasonable basis for applying *Apprendi* to allow judicial finding of a fact that is inconsistent with and contradicts the facts established through constitutional procedures. The very reason for the exception is to recognize facts that have already "been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees." *Jones*, 526 U.S. at 249. The phrase "fact of a

---

By contrast, the rationale of our dissenting colleagues would render the *Apprendi* rule meaningless. It would, in effect, shift this case to the "contrary to" prong of AEDPA, preserving the "unreasonable application" prong of AEDPA in name only. Such an analysis is particularly inappropriate here because the Pennsylvania Superior Court correctly "identified controlling Supreme Court precedent." Dissenting Op. of Greenaway, J. at Part I (citing *Williams*, 529 U.S. at 406).

23

prior conviction" might be reasonably construed to allow judicial factfinding of a fact underlying a prior conviction or a fact consistent with a prior conviction. However, absent case law authorizing some type of paradoxical interpretation, "fact of a prior conviction" cannot reasonably be interpreted to allow judicial factfinding of a fact contradicting a prior conviction or a fact inconsistent with a prior conviction.[9]

---

[9] Judge Greenaway faults our opinion for an alleged internal inconsistency: we rely on *Apprendi*, a case concerned with the Sixth Amendment right to a jury trial, to require the sentencing judge to determine that Garrus's prior conviction was *not* a crime of violence. Dissenting Op. of Greenaway, J. at Part III. But *Apprendi* does not prohibit a judge from finding facts that do not increase a sentence beyond the statutory maximum. Rather, *Apprendi only* prohibits judicial factfinding that increases a sentence beyond the statutory maximum. 530 U.S. at 490.

No existing precedent so much as hints that a paradoxical interpretation of *Apprendi* might be reasonable.[10] Thus, under *Apprendi*, it was objectively unreasonable for the state court to allow Garrus to be sentenced beyond the statutory maximum based on a mere allegation that actually defied and contradicted his prior conviction. The Commonwealth proffers several cases, which it argues could have supported the state court's decision to apply the prior conviction exception in Garrus's case, but its attempts fall flat.

Despite the Commonwealth's attempts to paint it as such, *Almendarez-Torres* is not a panacea allowing recidivism-related judicial factfinding, or supporting the state court's determination that *Apprendi*'s prior conviction exception permitted the sentencing judge to find that Garrus had burglarized an occupied building despite his plea to the contrary. *Apprendi* cited *Almendarez-Torres* as the "limited"

---

[10] Judge Greenaway counters that "no Supreme Court precedent suggests that the majority's interpretation is the only reasonable interpretation." Dissenting Op. of Greenaway, J. at Part III. This argument implies that Judge Greenaway would defer to an objectively unreasonable state court judgment as long as there were more than one possible reasonable application of a Supreme Court precedent. While AEDPA mandates a highly deferential standard, it does not go as far as Judge Greenaway suggests. Instead, the test is whether the state court judgment "can[] be reconciled with any reasonable application of the controlling standard[.]" *Panetti*, 551 U.S. at 953.

and "narrow" exception to the *Apprendi* rule, 530 U.S. at 488 n.14, 489-90, and explained that the constitutionality of that exception rested on (1) "the certainty that procedural safeguards attached to any 'fact' of prior conviction," and (2) "the reality that Almendarez-Torres did not challenge the accuracy of that 'fact' in his case[.]" *Id.* at 488. In fact, *Apprendi* emphasized these factors at least twice, and it is important to note that neither factor is present in this case. Regarding the first factor, the only "fact" judicially found by the sentencing court in *Almendarez-Torres* was the actual fact that the defendant was convicted, and that "fact" had previously been established through a conviction process applying procedural safeguards. In contrast, Garrus was only accused of – not convicted of – the violent crime of burglarizing an occupied building (which would have been first-degree burglary). More importantly, Garrus only pled guilty and was convicted of burglarizing an unoccupied building (second-degree burglary). Thus, unlike the *Almendarez-Torres* defendant, whose sentence was enhanced based on actual prior convictions, Garrus's sentence was enhanced beyond the statutory maximum without a basis in any jury determination or plea admission. Because the "fact" of which Garrus was accused was never found by a jury nor was it an element of the crime for which he pled guilty, no procedural safeguards attached to the finding of this "fact."

As to the second factor, Garrus makes clear in his reply brief that, unlike Almendarez-Torres, he did not concede or admit the fact at issue. In fact, at the sentencing hearing, he questioned the judicial finding that his 1997 conviction was a "crime of violence." (Sentencing Hr'g Tr.

26

28, May 8, 2001, *see* App. at 177a.) A defendant waives his *Apprendi* rights only if he "either stipulates to the relevant facts or consents to judicial factfinding." *Blakely v. Washington*, 542 U.S. 296, 310 (2004) (citing *Apprendi*, 530 U.S. at 488; *Duncan v. Louisiana*, 391 U.S. 145, 158 (1968)). Thus, neither of the two factors that allowed *Almendarez-Torres* to stand as a narrow exception to *Apprendi* apply in this case. As *Apprendi* explained, "there is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt," as occurred in *Almendarez-Torres*, and "allowing the judge to find the required fact under a lesser standard of proof[,]" as occurred in both *Apprendi* and here in Garrus's case. *See* 530 U.S. at 496. Therefore, it was objectively unreasonable for the state court to find that *Almendarez-Torres* authorized the application of *Apprendi*'s prior conviction exception in this case.

Had Garrus been convicted of first-degree burglary in 1997 (based on a jury finding or plea establishing that he burglarized a building that was occupied and adapted for overnight accommodation), we do not doubt that under *Almendarez-Torres*, the court sentencing him for his later manslaughter conviction could have taken note of the earlier first-degree burglary conviction and held that it qualified as a crime of violence under Pennsylvania's "three strikes" law. However, Garrus was convicted of second-degree burglary.

Given the highly deferential AEDPA standard, it is even possible that if Pennsylvania merely had a generic

27

burglary statute that did not differentiate between burglarizing an occupied or unoccupied building, a reasonable application of the "fact of a prior conviction" exception might have permitted the judge to look at facts underlying the prior burglary conviction to determine whether Garrus was convicted of burglarizing an occupied building.[11] *See*, *e.g.*, *United States v. Santiago*, 268 F.3d 151, 153, 157 (2d Cir. 2001) (finding that *Apprendi* allows a sentencing judge to find "not only the mere fact of previous convictions but [certain] other related issues as well");[12] *cf. Taylor v. United*

---

[11] We do not make any determination regarding this hypothetical issue; rather, we raise it to highlight the narrow scope of the issue before us today.

[12] The Dissents urge us to follow *Santiago*. Dissenting Op. of Greenaway, J. at Part III; Dissenting Op. of Hardiman, J. at Part II. There, the issue was whether, under the federal recidivism statute, *Apprendi* required a jury to find beyond a reasonable doubt that the defendant's three predicate convictions were committed on separate occasions. *Santiago*, 268 F.3d at 152-53. Then-Judge Sotomayor ruled that *Apprendi* did not prohibit sentencing judges from "determin[ing] the 'who, what, when, and where' of a prior conviction." *Id.* at 156. But the Second Circuit declined to extend this exception to the *Apprendi* rule "to *all* issues related to recidivism[.]" *Id.*

*States*, 495 U.S. 575, 602 (1990) (holding that under a federal "three strikes" law, the sentencing judge may only find facts that were *necessary* to the prior conviction). However, the sentencing judge in this case looked at the previous conviction for burglarizing an unoccupied building, and nonetheless found facts supporting exactly the opposite proposition: that the building had been occupied. Because Garrus was convicted of burglarizing an unoccupied building, the finding that the building was occupied was simply not a "fact of a prior conviction." The finding that the building was occupied could be viewed as a fact of a prior accusation of first-degree burglary, or as a fact contradicting a prior

*Santiago* is not controlling here. As an initial matter, *Santiago* is not "existing precedent" for AEDPA purposes. *See Harrington*, 131 S. Ct. at 785 ("Federal habeas relief may not be granted for claims subject to [28 U.S.C. § 2254(d)(1)] unless it is shown that the earlier state court's decision . . . involved an unreasonable application" of "federal law then clearly established in the holdings of the Supreme Court.") (citations and internal quotations omitted). More importantly, permitting a sentencing judge to determine facts related to the "who, what, when, and where" of a prior conviction is altogether different from allowing judicial factfinding that completely contradicts a prior conviction. Here, the sentencing court found as a "fact" related to Garrus's prior conviction an allegation that was contained in a police report and victim statement and that was irreconcilable with his plea agreement. The Second Circuit's reasoning in *Santiago* cannot be stretched to these facts.

29

conviction for second-degree burglary. Either way, it cannot be reasonably interpreted as a "fact of a prior conviction."

We likewise disagree with the Commonwealth's convoluted argument that *Shepard* somehow supports the state court's determination because it was decided on a statutory basis rather than a constitutional one. As a threshold matter, we note that Garrus contends that *Shepard* supports him rather than the Commonwealth. However, because *Shepard*'s holding was limited to a federal statute that is inapplicable here and its constitutional discussion was mere *dicta*, Garrus cannot rely on it for relief. *See Carey*, 549 U.S. at 74 ("'[C]learly established Federal law' in § 2254(d)(1) 'refers to the holdings, as opposed to the dicta, of th[e] [Supreme] Court's decisions as of the time of the relevant state-court decision.'" (quoting *Williams*, 529 U.S. at 412)).[13] Nevertheless, we will address the Commonwealth's argument that *Shepard* somehow made the state court's application of *Apprendi* reasonable. *Cf. Price v. Vincent*, 538 U.S. 634, 643 and n.2 (2003) (even cases that are not binding might be relevant to the consideration of whether a state court decision is objectively unreasonable).

*Shepard* involved a sentencing enhancement pursuant to 18 U.S.C. § 924, which applies where a defendant has been

---

[13] We need not reach the issue of whether *Teague*'s retroactivity inquiry also precludes Garrus from relying on *Shepard* for relief. *See Horn v. Banks*, 536 U.S. 266, 272 (2002) (noting that *Teague*'s retroactivity inquiry remains relevant post-AEDPA).

previously convicted of violent felonies, including burglaries of buildings. 544 U.S. at 15-16. Shepard had previously been convicted of burglary four times, but he was convicted of burglarizing structures under Massachusetts law, and thus it was unclear from his convictions whether he had burglarized buildings or some other types of structures such as vehicles. *Id.* at 16-17; *see also id.* at 31 (O'Connor, J., dissenting). The Supreme Court held, based on principles of statutory interpretation, that the sentencing court was not permitted to look at police reports in order to determine whether the structures the defendant had burglarized were buildings. *Id.* at 16-22. It ruled that the sentencing court was "limited to the terms of the charging document, the terms of a plea agreement or [the terms of the] transcript of [the plea] colloquy . . . or to some comparable judicial record of this information." *Id.* at 26.

The Commonwealth suggests that the state court could have gleaned support from *Shepard* by finding that because *Shepard*'s holding was not constitutionally based, the use of police reports for judicial factfinding was constitutionally permissible. However such *non sequitur* reasoning is objectively unreasonable. The *Shepard* Court did nothing more than employ the classic doctrine of constitutional avoidance by deciding the case on a statutory basis. It is entirely unreasonable to read constitutional avoidance as indicative that a practice is constitutionally permissible. In fact, if anything can be read into the *Shepard* Court's discussion of the Constitution in *dicta*, it is that the majority of the Court expressed grave constitutional concerns: four justices cited concerns that looking at police reports

31

underlying a prior conviction posed "serious risks of unconstitutionality" under *Apprendi*, and Justice Thomas would have gone further and found the entire "fact of a prior conviction" exception to be unconstitutional. *See id*. at 25 (plurality); *id*. at 26-28 (Thomas, J., concurring in part and concurring in the judgment).

Even assuming for purposes of this analysis that the Supreme Court expressed constitutional uncertainty about *Apprendi*'s application in *Shepard*, it does not follow that *Apprendi*'s application here is unclear. In fact, nothing in *Shepard* supports the Commonwealth's argument that "the fact of a prior conviction" might be reasonably construed to mean a fact contradicting a prior conviction because *Shepard* simply did not involve a fact contradicting a prior conviction. Crucially, Shepard had four times been convicted of burglarizing structures, and the police reports did not contradict this fact. Rather, the police reports supported the conviction for burglary of structures, and merely explained specifically that the types of structures involved were buildings. As the plurality noted, the factual allegations in the *Shepard* police reports might have been permitted by *Apprendi* as "a fact *about* a prior conviction[.]" *Shepard*, 544 U.S. at 25 (plurality) (emphasis added). The *Shepard* dissent's argument also highlights this distinction by stating that sentencing judges should be able to refer to "internally consistent parts of the record from the earlier conviction." *Id*. at 31 (O'Connor, J., dissenting). In contrast, the police report alleging that Garrus burglarized an occupied building cannot reasonably be interpreted as a fact consistent with or a fact

32

about Garrus's conviction for burglarizing an unoccupied building.

Rather than supporting the Commonwealth's argument, *Shepard* demonstrates that even judicial factfinding that is consistent with a prior conviction might be unconstitutional. By no means does it support the proposition that *Apprendi*'s "fact of a prior conviction" exception might be reasonably interpreted to allow judicial factfinding that contradicts a prior conviction.

Finally, the Commonwealth strains to argue that some Circuit court cases show that the state court's application of *Apprendi* was reasonable. *See Kessee v. Mendoza-Powers*, 574 F.3d 675 (9th Cir. 2009); *United States v. Smith*, 474 F.3d 888, 892 (6th Cir. 2007), *abrogation on other grounds recognized by United States v. Johnson*, 640 F.3d 195, 205 (6th Cir. 2011); *Boyd v. Newland*, 467 F.3d 1139 (9th Cir. 2006); *United States v. Hollingsworth*, 414 F.3d 621 (6th Cir. 2005); *United States v. Williams*, 410 F.3d 397 (7th Cir. 2005); *United States v. Camacho-Ibarquen*, 410 F.3d 1307 (11th Cir. 2005); *United States v. Kempis-Bonola*, 287 F.3d 699 (8th Cir. 2002); *Santiago*, 268 F.3d at 151. We disagree; none of these cases demonstrates that it was reasonable for the state court to apply *Apprendi* to sentence a defendant beyond the statutory maximum based on a fact contradicting a

33

prior conviction.[14]  In short, none of these cases involves a judicial finding of fact that contradicted the defendant's prior

---

[14] Contrary to Judge Hardiman's argument, there is no circuit split on this issue, and our decision here does not create one.  Dissenting Op. of Hardiman, J. at Part II.  Neither *Portalatin v. Graham*, 624 F.3d 69 (2d Cir. 2010), nor *United States v. Davis*, 260 F.3d 965 (8th Cir. 2001), addresses the question in this case.  For this reason, we express no view on whether these cases were decided correctly, nor do we question the fairmindedness of those jurists.

In *Portalatin*, the petitioners were sentenced under New York's recidivism statute.  624 F.3d at 72.  Pursuant to that law, a defendant is subject to an increased sentencing range as a repeat offender "based *solely* on whether [he] [has] two prior convictions."  *Id.* at 88 (quoting *People v. Rivera*, 833 N.E.2d 194, 198 (N.Y. 2005) (original emphasis)).  After a sentencing court determines that a defendant is a repeat offender and that an increased sentencing range applies, it considers "the history and character of the defendant, and the nature and circumstances of his crime," before selecting a sentence within the increased range.  *Id.* at 90.  In *Portalatin*, the Second Circuit first agreed with the New York Court of Appeals that if the recidivism statute were construed "to require the court to *find* additional facts about the defendant before imposing a recidivism sentence, the statute[] would violate *Apprendi*."  *Id.* at 89 (quoting *Rivera*, 833 N.E.2d at 198) (emphasis added).  But the *Portalatin* court also concluded that a sentencing court could *consider* subsidiary facts about a defendant's prior convictions before imposing a

34

repeat offender sentence without violating *Apprendi*. *Id.* at 92. Nonetheless, the important point here is that the Second Circuit did not discuss whether the sentencing court could find or consider underlying facts that contradict an offender's prior conviction. The failure to address this subject is unsurprising as the *Portalatin* petitioners did not dispute their underlying convictions. *Id.* at 75-78.

Similarly, in *Davis*, the appellant, sentenced as a repeat offender under federal law, argued that due process required a jury to conclude beyond a reasonable doubt that his prior convictions were qualifying felonies under the recidivism statute. 260 F.3d at 967-69. The Eighth Circuit held only that, under *Apprendi* and *Almendarez-Torres*, the "fact of prior conviction includes . . . a determination of whether a conviction is one of the enumerated types qualifying for the sentence enhancement under [18 U.S.C. § 3559]." *Id.* at 969 (citation omitted). Conspicuously absent from the *Davis* decision is any indication that the Eighth Circuit would have held it reasonable for the state court, in making its determination, to find facts precluded by the prior conviction.

35

conviction.[15]  In fact, at least one of the cases did not even involve judicial factfinding that increased the penalty beyond

---

[15] Only Garrus cites to a case that is close to being on point:  *Wilson*, 638 F.3d 1213.  Wilson was convicted by a jury of driving under the influence with a prior felony conviction.  *Id*. at 1214.  At sentencing, the judge found that Wilson's conviction was his third strike under California's "three strikes" law, and enhanced his sentence accordingly.  In order to find that one of the previous convictions counted as a strike under California's "three strikes" law, the sentencing judge had to make several findings of fact that were not necessary for the conviction.  *Id*. at 1215.  The issue for the Ninth Circuit was whether such judicial findings "fell within the prior conviction exception."  *Id*.  The Ninth Circuit started by noting that "[c]ourts may reasonably disagree about some of the precise boundaries of the exception . . . [b]ut that does not mean that *Apprendi* is amorphous."  *Id*.  It went on to find that the judicially found facts – such as the extent of the victim's injuries – were disputed and not found by a jury or in any way necessary to the conviction.  *Id*.  "The judge . . . speculated as to how a [previous] jury . . . might have evaluated the evidence if the evidence had been offered and if a jury had been impaneled to evaluate it."  *Id*.  Thus, the judge's factfinding "extended beyond any reasonable interpretation of the prior conviction exception."  *Id*.

36

the prescribed statutory maximum.  *See Smith*, 474 F.3d at 892.

Upon a thorough and circumspect examination of the potential arguments or theories that "supported or . . . could have supported, the state court's decision[,]" we believe that no "fair-minded jurist could disagree that those arguments or

Just as in *Wilson*, Garrus's sentencing judge made judicial findings of fact that were not necessary to his prior conviction, and then speculated as to how a jury might have evaluated the evidence had it been offered, or whether Garrus might have admitted to the evidence at his plea hearing.  The Commonwealth tries to distinguish *Wilson* on the basis that the facts here in Garrus's case are "less controversial" than the judicially found facts in *Wilson*, but we find such a distinction unavailing; regardless of how controversial the facts were in *Wilson*, the determinative issue was that such facts were not necessary to the verdict, and were never determined by a jury nor pled to by the defendant.  *Id*. at 1215-16.  If anything, Garrus's case is stronger than Wilson's because in Garrus's case the facts actually *contradicted* his prior conviction, whereas in Wilson's case, the facts were simply not necessary to the prior conviction.

theories are inconsistent with the holding in" *Apprendi*.[16]
*Harrington*, 131 S. Ct. at 786; *see also Panetti*, 551 U.S. at
953 (The "record . . . cannot, under any reasonable
interpretation of the controlling legal standard, support [the
state's] legal ruling."). In fact, no fairminded jurist could
disagree that the state court's paradoxical interpretation of the
prior conviction exception renders an absurd result under
*Apprendi*, allowing a judge that applies the "three strikes"
statute to make the very factual finding that an earlier judge
would have been prohibited from making. As we noted
above, Apprendi pled guilty to unlawful possession of a
weapon, a second-degree offense punishable by a maximum
of ten years' imprisonment, but the judge increased the
sentence beyond the statutory maximum based on the finding
of an additional factor, effectively imposing punishment on
the defendant for a first-degree offense. *Apprendi*, 530 U.S.

---

[16] Judge Greenaway accuses us of wasting "pages
examining Supreme Court precedent" without "grappl[ing]
with precedent that undermines" our position. Dissenting Op.
of Greenaway, J. at Part II. We agree that it would have been
simpler for us to prove the reasonableness of our own
interpretation of *Apprendi*. But we recognize that under
AEDPA, we "must determine what arguments or theories
supported or . . . could have supported the state court's
decision; and then [we] must ask whether it is possible
fairminded jurists could disagree that those arguments or
theories are inconsistent with the holding in a prior decision
of [the Supreme] Court." *Harrington*, 131 S. Ct. at 786. Our
analysis comports with this standard.

38

at 491. Thus, under *Apprendi*, it is clear that a judge applying the initial sentence for second-degree burglary (under Pennsylvania law) cannot enhance the sentence beyond the statutory maximum based on the finding that the defendant burglarized an occupied building, effectively imposing punishment on the defendant for a first-degree offense. The Commonwealth today would have us believe that *Apprendi* may be reasonably applied to allow a later judge sentencing a defendant to look back at the defendant's initial conviction and make the factual finding that the initial sentencing judge was prohibited from making. *Apprendi* cannot be reasonably construed or applied to allow this absurd result.

Accordingly, we conclude that it was objectively unreasonable for the state court to apply *Apprendi*'s prior conviction exception to allow judicial factfinding based on an allegation that actually defied and contradicted the elements of the prior conviction. The rule of *Apprendi* and the prior conviction exception simply cannot be reconciled with the state court decision. In sum, Garrus has shown that "the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786-87.

We recognize the rarity of today's determination; seldom does a state court's decision fail to withstand AEDPA's highly deferential standard. However, our conclusion that the state court unreasonably applied clearly established law by relying on a narrow and inapplicable exception is not unprecedented. *See Abdul-Kabir v. Quarterman*, 550 U.S. 233, 258 (2007) (finding that the state

39

court unreasonably applied clearly established law by relying on an inapplicable "narrow holding" and "ignoring the fundamental principles established by [the Supreme Court's] most relevant precedents"); *Williams*, 529 U.S. at 397 (finding that the state court unreasonably applied clearly established law by relying on an "inapplicable" exception to the law clearly established by *Strickland*). AEDPA severely constrained our ability to review state court decisions, but it did not render our review void or meaningless. *See, e.g.*, *Harrington*, 131 S. Ct. at 786 ("§ 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings."); *Jamison*, 544 F.3d at 273 (the "unreasonable application" standard is not meaningless). We must use our habeas authority only to "guard against extreme malfunctions in the state criminal justice systems," *Harrington*, 131 S. Ct. at 786, and today, we exercise our authority to do so.

## V.

We conclude that the District Court erred in determining that § 2254(d)(1) prevented it from granting Garrus habeas relief. The state court unreasonably applied *Apprendi* by allowing Garrus to be sentenced beyond the statutory maximum based on a judicial finding that he burglarized an occupied building when he was actually convicted of burglarizing an unoccupied building.

Having determined that AEDPA does not bar federal habeas relief, we must also consider whether the state court determination had a "substantial and injurious effect" on Garrus's sentence. *Fry v. Pliler*, 551 U.S. 112, 116-20

40

(2007); *see also Horn*, 536 U.S. at 272 ("none of our post-AEDPA cases have suggested that a writ of habeas corpus should automatically issue if a prisoner satisfies the AEDPA standard"). There is no doubt that the state court's determination relied on its application of *Apprendi* to uphold the trial court's decision to increase the length of Garrus's sentence, and that Garrus has therefore shown a "substantial and injurious effect." We conclude that the District Court erred in failing to grant habeas relief under these circumstances. We will reverse the order of the District Court, and remand with directions that a writ of habeas corpus be conditionally granted, providing that petitioner be resentenced or released from custody within 120 days, unless, within that time, the Commonwealth of Pennsylvania determines that petitioner qualifies for the sentencing enhancement based on his two 1995 robbery convictions.

41

*Garrus v. Sec'y PA Dept. of Corrections*
No. 09-3586

HARDIMAN, *Circuit Judge*, dissenting, joined by CHAGARES, GREENAWAY, JR., and VANASKIE, *Circuit Judges*.

Judge Greenaway has succinctly explained how the Court has gone astray in this case, and I join his dissent in its entirety. I write separately because I think the reason *why* the majority has erred illuminates *how* it has done so.

I

Since its enactment in 1996, no law has so vexed the United States Courts of Appeals as the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254. In twelve years, the Supreme Court has granted certiorari in ninety-four cases arising under AEDPA, forty-six of which involved questions of federal court deference to decisions of state courts.[1] Thirty-four of those cases (approximately

---

[1] *See Parker v. Matthews*, 132 S. Ct. 2148 (2012); *Coleman v. Johnson*, 132 S. Ct. 2060 (2012); *Lafler v. Cooper*, 132 S. Ct. 1376 (2012); *Howes v. Fields*, 132 S. Ct. 1181 (2012); *Hardy v. Cross*, 132 S. Ct. 490 (2011); *Bobby v. Dixon*, 132 S. Ct. 26 (2011); *Cavazos v. Smith*, 132 S. Ct. 2 (2011); *Bobby v. Mitts*, 131 S. Ct. 1762 (2011); *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011); *Felkner v. Jackson*, 131 S. Ct. 1305 (2011); *Harrington v. Richter*, 131 S. Ct. 770 (2011); *Premo v. Moore*, 131 S. Ct. 733 (2011); *Berghuis v. Thompkins*, 130 S. Ct. 2250 (2010); *Renico v. Lett*, 130 S. Ct. 1855 (2010); *Berghuis v. Smith*, 130 S. Ct. 1382 (2010); *Wood v. Allen*, 130 S. Ct. 841 (2010); *Smith v. Spisak*, 130

seventy-four percent) have been reversed because the court of appeals failed to afford sufficient deference to the state court.[2]

S. Ct. 676 (2010); *McDaniel v. Brown*, 130 S. Ct. 665 (2010); *Porter v. McCollum*, 130 S. Ct. 447 (2009); *Knowles v. Mirzayance*, 556 U.S. 111 (2009); *Waddington v. Sarausad*, 555 U.S. 179 (2009); *Wright v. Van Patten*, 552 U.S. 120 (2008); *Panetti v. Quarterman*, 551 U.S. 930 (2007); *Fry v. Pliler*, 551 U.S. 112 (2007); *Uttecht v. Brown*, 551 U.S. 1 (2007); *Schriro v. Landrigan*, 550 U.S. 465 (2007); *Brewer v. Quarterman*, 550 U.S. 286 (2007); *Abdul-Kabir v. Quarterman*, 550 U.S. 233 (2007); *Carey v. Musladin*, 549 U.S. 70 (2006); *Rice v. Collins*, 546 U.S. 333 (2006); *Kane v. Garcia Espitia*, 546 U.S. 9 (2005); *Rompilla v. Beard*, 545 U.S. 374 (2005); *Miller-El v. Dretke*, 545 U.S. 231 (2005); *Brown v. Payton*, 544 U.S. 133 (2005); *Holland v. Jackson*, 542 U.S. 649 (2004); *Yarborough v. Alvarado*, 541 U.S. 652 (2004); *Middleton v. McNeil*, 541 U.S. 433 (2004); *Mitchell v. Esparza*, 540 U.S. 12 (2003); *Yarborough v. Gentry*, 540 U.S. 1 (2003); *Wiggins v. Smith*, 539 U.S. 510 (2003); *Lockyer v. Andrade*, 538 U.S. 63 (2003); *Woodford v. Visciotti*, 537 U.S. 19 (2002); *Early v. Packer*, 537 U.S. 3 (2002); *Bell v. Cone*, 535 U.S. 685 (2002); *Ramdass v. Angelone*, 530 U.S. 156 (2000); *Williams v. Taylor*, 529 U.S. 362 (2000).

[2] *See Parker*, 132 S. Ct. 2148; *Coleman*, 132 S. Ct. 2060; *Howes*, 132 S. Ct. 1181; *Hardy*, 132 S. Ct. 490; *Dixon*, 132 S. Ct. 26; *Cavazos*, 132 S. Ct. 2; *Mitts*, 131 S. Ct. 1762; *Pinholster*, 131 S. Ct. 1388; *Felkner*, 131 S. Ct. 1305; *Harrington*, 131 S. Ct. 770; *Premo*, 131 S. Ct. 733; *Thompkins*, 130 S. Ct. 2250; *Renico*, 130 S. Ct. 1855; *Smith*, 130 S. Ct. 1382; *Spisak*, 130 S. Ct. 676; *McDaniel*, 130 S. Ct.

Remarkably, twenty-two of those cases—almost fifty percent—were reversed without dissent.[3]

---

665; *Knowles*, 556 U.S. 111; *Waddington*, 555 U.S. 179; *Wright*, 552 U.S. 120; *Uttecht*, 551 U.S. 1; *Schriro*, 550 U.S. 465; *Carey*, 549 U.S. 70; *Rice*, 546 U.S. 333; *Kane*, 546 U.S. 9; *Payton*, 544 U.S. 133; *Holland*, 542 U.S. 649; *Yarborough*, 541 U.S. 652; *Middleton*, 541 U.S. 433; *Mitchell*, 540 U.S. 12; *Gentry*, 540 U.S. 1; *Lockyer*, 538 U.S. 63; *Woodford*, 537 U.S. 19; *Early*, 537 U.S. 3; *Bell*, 535 U.S. 685.

[3] *See Parker*, 132 S. Ct. at 2155 (holding that the Sixth Circuit erred by following its own precedent rather than that of the Supreme Court in determining what is "clearly established Federal law"); *Coleman*, 132 S. Ct. at 2062 (holding that the Third Circuit "failed to afford due respect to the role of the jury and the state courts of Pennsylvania"); *Hardy*, 132 S. Ct. at 495 (reversing the Second Circuit and stating, "[T]he deferential standard of review set out in 28 U.S.C. § 2254(d) does not permit a federal court to overturn a state court's decision on the question of unavailability merely because the federal court identifies additional steps that might have been taken. Under AEDPA, if the state-court decision was reasonable, it cannot be disturbed."); *Dixon*, 132 S. Ct. at 27 ("Because it is not clear that the Ohio Supreme Court erred at all, much less erred so transparently that no fairminded jurist could agree with that court's decision, the Sixth Circuit's judgment must be reversed."); *Mitts*, 131 S. Ct. at 1765 (holding that the Sixth Circuit erred in finding that the state court's jury instructions were contrary to clearly established federal law); *Felkner*, 131 S. Ct. at 1307 ("The state appellate court's decision was plainly not unreasonable.

3

There was simply no basis for the Ninth Circuit to reach the opposite conclusion, particularly in such a dismissive manner."); *Harrington*, 131 S. Ct. at 778 ("[The Ninth Circuit's] opinion shows an improper understanding of § 2254(d)'s unreasonableness standard and operation in the context of a *Strickland* claim."); *Premo*, 131 S. Ct. at 746 (holding that the Ninth Circuit erred in granting habeas relief because the state court's decision was not an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984)); *Berghuis*, 130 S. Ct. at 1392 (finding that the Sixth Circuit erred in granting habeas relief because the state court's decision was consistent with *Duren v. Missouri*, 439 U.S. 357 (1979)); *Spisak*, 130 S. Ct. at 684 (holding that the Sixth Circuit erred in granting habeas relief because the state court's upholding of jury instructions and verdict forms regarding the weighing of aggravating and mitigating factors was not "contrary to, or . . . an unreasonable application of, clearly established Federal law" (citation and internal quotation marks omitted)); *McDaniel*, 130 S. Ct. at 672 (holding that the Ninth Circuit erred in granting habeas relief because the state court's rejection of the defendant's insufficiency-of-the-evidence claim was not unreasonable under AEDPA); *Knowles*, 556 U.S. at 114 (finding that the Ninth Circuit erred because the state court's decision that the defendant was not deprived of effective counsel was not "contrary to, or . . . an unreasonable application of, clearly established Federal law" (citation and internal quotation marks omitted)); *Wright*, 552 U.S. at 126 (reversing the Seventh Circuit and stating, "because our cases give no clear answer to the question presented, let alone one in [the defendant]'s favor, it cannot be said that the state court unreasonably applied clearly established Federal law."

4

(citation and internal quotation marks omitted)); *Carey*, 549 U.S. at 72 (holding that the Ninth Circuit improperly granted habeas relief because the state court's decision that it was not inherently prejudicial when court spectators wore buttons depicting the murder victim was not contrary to or an unreasonable application of clearly established federal law); *Rice*, 546 U.S. at 334 (finding that the Ninth Circuit improperly granted habeas relief because it was not unreasonable for the state trial court to "credit the prosecutor's race-neutral explanations for the [defendant's] *Batson* challenge"); *Kane*, 546 U.S. at 10 (holding that the Ninth Circuit improperly granted habeas relief because there exists no clearly established right under federal law to access a law library while in jail); *Holland*, 542 U.S. at 652 (concluding that the Sixth Circuit erred because the state court's application of *Strickland* was not unreasonable under AEDPA); *Middleton*, 541 U.S. at 437–38 (holding that the Ninth Circuit erred because the state appellate court's conclusion that one incorrect statement in jury instructions did not render the instructions likely to mislead the jury was not unreasonable); *Mitchell*, 540 U.S. at 13 (finding that the Sixth Circuit's decision "ignore[d] the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)"); *Gentry*, 540 U.S. at 11 (noting that the Ninth Circuit gave "too little deference to the state courts that have primary responsibility for supervising defense counsel in state criminal trials"); *Woodford*, 537 U.S. at 20 (holding that the Ninth Circuit's decision "exceed[ed] the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)"); *Early*, 537 U.S. at 4 (finding that the state appellate court's determination that the trial court's comments did not coerce the jury was not contrary to clearly established federal law).

5

The Supreme Court decisions catalogued in the margin echo a common mistake: the failure to adhere to AEDPA's extraordinarily deferential standard of review. Our Court makes that same mistake today.

The majority's fundamental error is manifest in the question we presented to the parties: "whether the district court erred in considering the defendant's 1997 conviction for second-degree burglary in determining whether the defendant should be sentenced under Pennsylvania's 'three strikes' law, 42 Pa. Cons. Stat. § 9714." This was the wrong question to ask in an AEDPA case that originated in state court. As the Commonwealth of Pennsylvania correctly argued, "[u]nder the federal habeas statute, *the only question that matters* [is] whether [the] state court decision is contrary to, or involved an unreasonable application of, clearly established federal law.'" Appellee's Supp. Br. 1 (emphasis added) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003)). Indeed, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011). Even petitioner Garrus acknowledged—albeit in somewhat apologetic fashion—that the question we presented invited argument under the wrong legal standard:

> The question presented is somewhat ambiguous because the district court did not "consider" the 1997 burglary conviction for purposes of "determining whether the defendant should be sentenced under Pennsylvania's 'three strikes' law." Instead, applying 28 U.S.C. § 2254(d)(1), the district court analyzed whether the

6

Pennsylvania Superior Court unreasonably applied clearly established U.S. Supreme Court precedent when it upheld the state sentencing court's decision to rely on police reports and witness statements to make findings of fact about the 1997 burglary conviction, only to rely on those findings to impose an enhanced sentence under the Three Strikes Law.

Appellant's Br. 1 n.1.

Instead of posing a question that circumvented AEDPA's deferential standard of review, we should have asked whether any Supreme Court decision directly prohibits a state court judge from looking to the facts underlying a defendant's prior conviction when considering a recidivism enhancement. The answer to that question is "no."

## II

Central to the state court's decision was the issue of who—judge or jury—should find facts regarding prior convictions when assessing a defendant's history of recidivism. Because recidivism "'does not relate to the commission of the offense, *but goes to the punishment only*, [it] therefore . . . may be subsequently decided'" by the sentencing judge. *Almendarez-Torres v. United States*, 523 U.S. 224, 244 (1998) (quoting *Graham v. West Virginia*, 224 U.S. 616, 629 (1912)). Garrus did not even attempt to explain why his case does not fall squarely within the recidivism exception announced in *Almendarez-Torres*. Instead, he relied entirely on *Apprendi v. New Jersey*, 530 U.S. 466 (2000). But as then-Judge Sotomayor wrote for the Court of Appeals for the Second Circuit, in a case not subject to

7

AEDPA's deferential standard of review, "recidivism has long been considered a distinct issue," and "[n]othing in *Apprendi* itself—as it involved a hate crime statute enhancing sentences based on the motivation underlying the crime—calls that distinction into question." *United States v. Santiago*, 268 F.3d 151, 156 (2d Cir. 2001). Judge Sotomayor then clearly explained why *Apprendi* is of no help to habeas petitioners such as Garrus:

> *Almendarez-Torres* explains why recidivism requires special treatment, and absent an explicit Supreme Court ruling to the contrary, we decline to institute a policy that runs counter to the principles set forth in that opinion. In short, we read *Apprendi* as leaving to the judge . . . the task of finding not only the mere fact of previous convictions but other related issues as well. Judges frequently must make factual determinations for sentencing, so it is hardly anomalous to require that they also determine the "who, what, when, and where" of a prior conviction.

*Id.*

If this were not a case governed by AEDPA and the question presented was whether what befell Garrus violated the rule of *Apprendi*, the majority's decision might well be correct. It is no secret that *Almendarez-Torres* is one of the most tenuous precedents of the Supreme Court; three of the five sitting justices who participated in *Apprendi* have openly

8

criticized *Almendarez-Torres*.[4]  Nevertheless, I am convinced that even critics of *Almendarez-Torres* would be hard-pressed to hold that the state court in this case violated the rule of *Apprendi* when it found facts pursuant to a state recidivist statute.

The existence of a circuit split demonstrates that it is wrong to conclude that "'fairminded jurists could [not] disagree' on the correctness of the state court's decision" in this case.  *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Courts of Appeals for the Second and Eighth Circuits have found no constitutional violation in circumstances similar to those presented in this appeal.  *See Portalatin v. Graham*, 624 F.3d 69 (2d Cir. 2010) (en banc); *United States v. Davis*, 260 F.3d 965 (8th Cir. 2001).

In *Portalatin,* the Second Circuit consolidated the habeas petitions of three prisoners who had been sentenced under New York's persistent felony offender (PFO) statute. The petitioners argued that the statute was unconstitutional because it required a sentencing judge to assess the nature,

---

[4] *See Apprendi*, 530 U.S. at 489–90 (Scalia, Thomas, Ginsburg, JJ., joining the majority) ("[I]t is arguable that *Almendarez-Torres* was incorrectly decided, and that a logical application of our reasoning today should apply if the recidivist issue were contested."); *id.* at 520–21 (Thomas, J., concurring) ("[O]ne of the chief errors of *Almendarez-Torres*—an error to which I succumbed—was to attempt to discern whether a particular fact is traditionally (or typically) a basis for a sentencing court to increase an offender's sentence. . . . [T]his approach just defines away the real issue.").

9

rather than the mere fact of, predicate felony convictions before imposing a PFO sentence. They urged the court to construe the *Almendarez-Torres* exception to *Apprendi* narrowly so as to prevent a sentencing judge from considering the facts underlying a defendant's prior conviction when forming an opinion about his criminal history. Finding "no clear holding of the Supreme Court to command such a result," the Second Circuit explained that, "'[g]iven the lack of holdings from th[e] [Supreme Court]' construing the recidivism exception as narrowly as petitioners urge, 'it cannot be said that the state court unreasonably applied clearly established federal law.'" *Id.* at 92 (quoting *Carey v. Musladin*, 549 U.S. 70, 77 (2006)). Commenting on the "lack of guidance as to the precise scope of the recidivism exception," the court concluded:

> It might well be constitutionally significant whether a sentencing judge is required to find, for example, that a defendant's criminal history is "especially violent" before imposing a sentence, or whether, as in New York, a sentencing judge simply must find that the nature of his criminal history justifies "extended incarceration and life-time supervision." . . . The Supreme Court may answer that question at some future time. But, if our Court cannot divine a clear answer from the Court's existing holdings, AEDPA prevents us from faulting a state court for selecting one reasonable conclusion over another.

10

*Id.* at 93; *see also United States v. Snype*, 441 F.3d 119, 148 (2d Cir. 2006) (noting that while the continued viability of *Almendarez-Torres* has been questioned, the Supreme Court has not reversed that decision).

The Eighth Circuit reached a similar result in *Davis*. There, the appellant had been sentenced to a term of life imprisonment as a repeat offender following a federal conviction for attempted armed bank robbery, an offense that carried a statutory maximum of twenty-five years. He argued that the question of whether his past robbery convictions were qualifying felonies for purposes of the recidivist statute should have been decided by the jury, not by the sentencing judge. The court disagreed, finding that the "fact of prior conviction includes not only the fact that a prior conviction exists, but also a determination of whether a conviction is one of the enumerated types qualifying for the sentence enhancement." *Davis*, 260 F.3d at 969. Conceding that *Apprendi* casts doubt on the viability of *Almendarez-Torres*, the Eighth Circuit nonetheless concluded that its role was "to apply Supreme Court precedent as it stands, and not as it may develop." *Id.*

Adverse to the Second Circuit's decision in *Portalatin* and the Eighth Circuit's decision in *Davis* stands the opinion of the Ninth Circuit in *Wilson v. Knowles*, 638 F.3d 1213 (9th Cir. 2011). After a 1993 car accident, Wilson pleaded no contest to gross vehicular manslaughter while driving under the influence of alcohol and to proximately causing bodily injury while driving under the influence of alcohol. When sentencing Wilson for a separate 2000 conviction for driving under the influence with a prior felony, a California judge relied on the information and preliminary hearing transcripts from Wilson's 1993 convictions to find numerous additional

11

facts about the earlier offenses, including that Wilson personally inflicted bodily injury, that the bodily injury was great, and that his victim was not an accomplice. These factual findings led the judge to conclude that Wilson's 1993 convictions qualified as two predicate offenses for purposes of California's Three Strikes Law, and Wilson received an enhanced sentence of 25-years to life.

The Ninth Circuit held that the state court's factfinding was an unreasonable application of *Apprendi*. *See id.* at 1215 ("It would be unreasonable to read *Apprendi* as allowing a sentencing judge to find the kinds of disputed facts at issue here. . . . The judge's fact-finding seven years after the 1993 conviction extended beyond any reasonable interpretation of the prior conviction exception."). Chief Judge Kozinski dissented, stating: "The Supreme Court hasn't straightened all this out. . . . AEDPA deference can be a bitter pill to swallow. In some habeas cases, we must reject what appear to be valid constitutional claims because petitioner's rights have not yet been clearly established by the Supreme Court." *Id.* at 1217 (Kozinski, C.J., dissenting) (citations omitted).

Although it is possible that *Wilson* was correctly decided while *Portalatin*, *Davis*, and Chief Judge Kozinski's dissent in *Wilson* were all in error, it is immaterial for AEDPA purposes which line of analysis is correct. The mere fact of a difference of opinion among courts of appeals leads ineluctably to the conclusion that a state court cannot run afoul of AEDPA regardless of which of these two paths it chooses.

Stated differently, I am loath to conclude that the United States Court of Appeals judges who decided *Portalatin* and *Davis* are not "fairminded." *Yarborough*, 541

12

U.S. at 664. Indeed, the intersection of criminal procedure and constitutional law often presents difficult questions upon which reasonable minds can differ.[5] And while it is true that no Supreme Court decision explicitly *authorized* the state judge to delve into Garrus's prior conviction, the fact that no decision of the Court *prohibited* her from doing so is dispositive under AEDPA. Unless and until the Supreme Court overrules or modifies *Almendarez-Torres*, state courts cannot properly be held to have violated the Constitution when they find facts at sentencing to determine whether a recidivist statute applies. For that reason, I respectfully dissent.

---

[5] *See, e.g.*, *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009) (5-4 decision); *Apprendi*, 530 U.S. 466 (5-4 decision); *Almendarez-Torres*, 523 U.S. 224 (5-4 decision).

GREENAWAY, JR., *Circuit Judge*, dissenting, joined by CHAGARES, HARDIMAN, and VANASKIE, *Circuit Judges*.

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress vested the Supreme Court — and only the Supreme Court — with the authority to determine clearly established law for purposes of analyzing an inmate's federal challenge to a state court judgment. Today, the majority feigns fidelity to this enduring tenet of AEDPA jurisprudence. In the process, the majority assumes the role of legislator, rewriting AEDPA to add this Court, along with the Supreme Court, as the two judicial bodies capable of delineating clearly established law. Armed with this newly created authority, the majority wades through murky Supreme Court precedent and emerges with what it purports to be an unassailable legal principle: that the prior-conviction exception enshrined in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), forbids a sentencing court from finding facts inconsistent with a prior conviction when applying a state recidivism statute.

Unlike the majority, I cannot discern any principle in *Apprendi* or other authoritative Supreme Court precedent that would render this interpretation of the prior-conviction exception objectively unreasonable, the deferential standard by which we must judge the state court's determination. Indeed, the majority identifies not one Supreme Court case expounding on the contours of the amorphous prior-conviction exception. This lack of clarity coupled with the inherent tension between *Apprendi* and *Almendarez-Torres v. United States*, 523 U.S. 224 (1998) — a controlling case the majority brushes aside as having limited relevance — belies

1

the majority's triumphant conclusion that the state court's determination was objectively unreasonable.

I do not disagree that the majority's interpretation of the prior-conviction exception is *a* reasonable and even favorable one, preventing an otherwise seemingly inequitable result. Of course, our task is not to simply choose the preferred reading of an ambiguous legal phrase. Absent guidance from the Supreme Court, we are left to determine whether the state court's interpretation was objectively unreasonable. Given that this area of law is, at best, in a state of flux, AEDPA "demands that [the] state-court decision[] be given the benefit of the doubt." *Renico v. Lett*, --- U.S. ---, ---, 130 S. Ct. 1855, 1862 (2010) (internal quotation marks and citation omitted). For this reason, I am compelled to respectfully dissent.

## I. AEDPA Imposes a High Threshold

While the majority outlines the basic AEDPA framework governing our inquiry, AEDPA's prominent role in this case requires further elaboration.

As amended by AEDPA, 28 U.S.C. § 2254 provides, in pertinent part: "[A] circuit judge . . . shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[W]ith respect to any claim that was adjudicated on the merits in State court proceedings," the writ shall not issue unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

2

Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(1)-(2).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision involves an unreasonable application of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407. To qualify as an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. *Id.* at 409. That the state court decision was incorrect or erroneous is insufficient if the error was nonetheless objectively reasonable. *Id.* at 410; *see also Renico*, 130 S. Ct. at 1862 ("[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." (quoting *Williams*, 529 U.S. at 410)). "Indeed, 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" *Renico*, 130 S. Ct. at 1862 (quoting *Williams*, 529 U.S. at 411).

As a result, the "contrary" and "unreasonable application" thresholds are "highly deferential . . . for evaluating state-court rulings, which demand[] that state-court decisions be given the benefit of the doubt." *Cullen v.*

3

*Pinholster*, --- U.S. ---, ---, 131 S. Ct. 1388, 1398 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). These standards are "'difficult to meet,' because the purpose of AEDPA is to ensure that federal habeas relief functions as a 'guard against extreme malfunctions in the state criminal justice systems,' and not as a means of error correction." *Greene v. Fisher*, --- U.S. ---, ---, 132 S. Ct. 38, 43 (2011) (quoting *Harrington v. Richter*, --- U.S. ---, ---, 131 S. Ct. 770, 786 (2011)).

I agree with the majority that the focus of our inquiry is on the "unreasonable" prong because the state court identified controlling Supreme Court precedent. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause."). As such, we can grant Garrus's petition only if the sentencing court's application of Pennsylvania's recidivism statute transcended the bounds of this undeniably deferential framework.

## II. Majority's Discussion of Supreme Court Precedent Falls Short

It is undeniable that the majority's interpretation of *Apprendi*'s prior-conviction exception cannot stand in the absence of *clearly* established law. *See Howes v. Fields*, --- U.S. ---, ---, 132 S. Ct. 1181, 1187 (2012) (rejecting a circuit court's determination that Supreme Court precedent clearly established a categorical rule regarding custodial interrogations of inmates). Recognizing its obligation, the majority spends pages examining Supreme Court precedent. Yet nowhere in that examination does the majority grapple with precedent that undermines its position. This principled

4

avoidance is the only means by which the majority can reach the conclusion that Supreme Court precedent clearly establishes that it would be objectively unreasonable to interpret the phrase "the fact of a prior conviction" as the state court did in this case.

I do not disagree with the majority that *Apprendi* is at the forefront of our inquiry. I do disagree, however, with the majority's perception that *Apprendi* is the be-all and end-all of our inquiry. The majority's singular focus is apparent at the beginning of its opinion, stating that the "[k]ey" to resolving this case involves answering "whether, pursuant to AEDPA, the state court unreasonably applied *Apprendi*." (Majority Op. at 3.) However, as the majority acknowledges, Garrus was sentenced under 42 Pa. Cons. Stat. § 9714, Pennsylvania's recidivism statute. Despite this admission, *Almendarez-Torres* — a critical Supreme Court case examining a sentencing court's power to engage in factfinding when applying a recidivism statute — plays second fiddle to *Apprendi* in the majority's opinion. And when the majority does address *Almendarez-Torres*, it sidesteps the very logic in *Almendarez-Torres* that casts even the slightest doubt on the notion that the majority's interpretation of the prior-conviction exception is clearly established.

*Almendarez-Torres* involved a federal statute that permitted an enhanced penalty for any person unlawfully in the United States who had previously been deported after being convicted of an aggravated felony. 523 U.S. at 226. The defendant pled guilty to being in the United States, without permission, after being deported. *Id.* At sentencing, the defendant argued that the enhancement should not apply because his three previous convictions for aggravated

5

felonies, which the defendant did not contest, were not charged in the current indictment. *Id.* at 227. The district court rejected this argument, found the existence of the prior convictions, and applied the sentence enhancement. *Id.* The Fifth Circuit affirmed. *Id.* at 227-28.

The Supreme Court held that the district court properly treated the defendant's prior convictions as a sentencing factor and not a separate offense. *Id.* at 235. The Court repeatedly stressed that its analysis was predicated on the unique role recidivism plays at sentencing. *See id.* ("At the outset, we note that the relevant statutory subject matter is recidivism. That subject matter — prior commission of a serious crime — is as typical a sentencing factor as one might imagine."); *id.* ("With recidivism as the subject matter in mind . . . ."); *id.* at 241 ("[The statute at issue] involves one of the most frequently found factors that affects sentencing — recidivism."); *id.* at 243 ("[T]he sentencing factor at issue here — recidivism — is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence."). The Court noted that, historically, recidivism operated outside of the general framework requiring elements of an offense be submitted to a jury because "recidivism 'does not relate to the commission of the offense, *but goes to the punishment only*, and therefore . . . may be subsequently decided.'" *Id.* (quoting *Graham v. West Virginia*, 224 U.S. 616, 624 (1912)).

Two years after *Almendarez-Torres*, the Supreme Court rendered a decision in what we have described as its "seminal case" on sentencing — *Apprendi*. *Reinhold v. Rozum*, 604 F.3d 149, 152 (3d Cir. 2010). In *Apprendi*, the defendant received an enhanced sentence of twelve years for weapon offenses punishable by a statutory maximum of ten

6

years, based on a determination by the sentencing court, not the jury, that the crime was racially motivated. 530 U.S. at 470-71. Rejecting this approach, the Court pronounced that the Sixth Amendment required that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. Central to the Court's determination was the fact that the hate crime enhancement required a finding that the defendant's purpose was to intimidate on the basis of race — an inquiry into the defendant's *mens rea*, an element of the offense. *Id.* at 492-93.

The Court attempted to dispel any apparent tension between the rule announced in *Apprendi* and the Court's decision in *Almendarez-Torres*. "Whereas recidivism 'does not relate to the commission of the offense' itself, New Jersey's biased purpose inquiry goes precisely to what happened in the 'commission of the offense.'" *Id.* at 496 (quoting *Almendarez-Torres*, 523 U.S. at 230). But the Court was cognizant that "it is arguable that *Almendarez-Torres* was incorrectly decided" based on a "logical application" of the Court's analysis in *Apprendi*. *Id.* at 489. In the end, the Court reasoned that *Almendarez-Torres* "represents at best an exceptional departure" from *Apprendi*. *Id.* at 487. While the *Apprendi* Court provided less than unbridled support for *Almendarez-Torres*, it is clear that *Almendarez-Torres* had continuing vitality after *Apprendi*.

The majority devotes no attention to the integral role recidivism played in *Almendarez-Torres*, instead trying to minimize *Almendarez-Torres*'s significance entirely. Quoting *Apprendi*, the majority refers to *Almendarez-Torres* as having "limited" and "narrow" application. (Majority Op.

7

at 15 (quoting *Apprendi*, 530 U.S. at 488 n.14, 489).) Put in its proper light, however, this characterization in no way subverts the importance of *Almendarez-Torres* to Garrus's case.

*Apprendi* did not involve the application of a recidivism statute. Instead, *Apprendi* addressed a hate crime enhancement that inquired as to the defendant's *mens rea*, which the Court iterated was "as close as one might hope to come to a core criminal offense 'element.'" 530 U.S. at 493. By contrast, *Almendarez-Torres* expressly excluded recidivism as an exception to the nascent legal principle enshrined three years later in *Apprendi*. *Almendarez-Torres*, 523 U.S. at 244 ("[T]o hold that the Constitution requires that recidivism be deemed an 'element' of petitioner's offense would mark an abrupt departure from a longstanding tradition of treating recidivism as going to the punishment only." (internal quotation marks and citation omitted)). As a result, it is unsurprising that *Apprendi* ensured that *Almendarez-Torres* did not apply outside the recidivism context. However, recidivism is squarely at issue in this case, belying the majority's attempt to minimize *Almendarez-Torres*'s relevance.

As much as the majority would like to forget *Almendarez-Torres*, there is little debate that *Almendarez-Torres* remains binding precedent. After *Apprendi* cast doubt on the continuing vitality of *Almendarez-Torres*, we addressed whether *Almendarez-Torres*'s viability had been short-lived. Because the *Apprendi* Court expressly declined to overrule *Almendarez-Torres*, we unsurprisingly applied *Almendarez-Torres* and held that predicate offenses under a recidivism statute need not be charged in an indictment and submitted to the jury. *See United States v. Weaver*, 267 F.3d

8

231, 250 (3d Cir. 2001) ("Recently, in *Apprendi*[], the Court upheld the validity of *Almendarez-Torres* . . . ."). We have since reaffirmed the viability of *Almendarez-Torres* and have not retreated from this determination. *United States v. Arrelucea-Zamudio*, 581 F.3d 142, 157 n.15 (3d Cir. 2009) ("Although several Supreme Court decisions have cast doubt on the statute's continuing constitutional viability post-*Apprendi*, . . . we are bound by *Almendarez-Torres* . . . ."); *United States v. Ordaz*, 398 F.3d 236, 241 (3d Cir. 2005) ("The holding in *Almendarez-Torres* remains binding law . . . .").[1] The Supreme Court continues to recognize the separate treatment afforded prior convictions in *Almendarez-Torres*. *See United States v. O'Brien*, --- U.S. ---, ---, 130 S. Ct. 2169, 2174 (2010).

---

[1] Every other circuit court to have considered the issue has agreed that *Almendarez-Torres* remains good law. *See United States v. Gonzalez*, 682 F.3d 201, 204 (2d Cir. 2012); *United States v. Salazar*, 682 F.3d 953, 958 n.2 (11th Cir. 2012); *United States v. Farrell*, 672 F.3d 27, 37 n.12 (1st Cir. 2012); *United States v. Nigg*, 667 F.3d 929, 935-36 (7th Cir. 2012); *United States v. Ruiz-Apolonio*, 657 F.3d 907, 921 (9th Cir. 2011); *United States v. McMurray*, 653 F.3d 367, 371 (6th Cir. 2011); *United States v. Beckstrom*, 647 F.3d 1012, 1020 (10th Cir. 2011); *United States v. Smith*, 640 F.3d 358, 369 (D.C. Cir. 2011); *United States v. Olalde-Hernandez*, 630 F.3d 372, 377 (5th Cir. 2011); *United States v. Mason*, 628 F.3d 123, 134 (4th Cir. 2010); *United States v. Alston*, 625 F.3d 397, 406 (8th Cir. 2010).

9

### III. State Court's Determination Was Objectively Reasonable

Against this proper legal backdrop, there can be no doubt that, for purposes of sentencing under Pennsylvania's recidivism statute, the state court's determination that Garrus's second-degree burglary conviction could be treated as a first-degree offense was not objectively unreasonable. *Almendarez-Torres* established that a sentencing court applying a recidivism statute that carries with it a sentence above the statutory maximum is permitted to engage in judicial factfinding regarding the defendant's prior convictions. In *Apprendi*, the Court clarified that such judicial factfinding was impermissible, except that relating to "the fact of a prior conviction." 530 U.S. at 490. In other words, the exact undefined judicial factfinding permitted by *Almendarez-Torres*.

*Apprendi* provides no guidance regarding the scope or meaning of the prior-conviction exception. For good reason, *Apprendi*'s true import is not the establishment of the exception to the rule but the rule itself — that a judge cannot find facts regarding an element of the offense where the defendant faces a sentence above the statutory maximum. *Apprendi* did not need to expound on the scope of the prior-conviction exception because *Apprendi* was not, contrary to *Almendarez-Torres*, a recidivism case. The prior-conviction exception remains as amorphous and undefined as the day *Apprendi* was decided. *See Kessee v. Mendoza-Powers*, 574 F.3d 675, 676 (9th Cir. 2009) ("What is the scope of the 'prior conviction' exception to the general rule that a sentencing judge may not make factual findings that increase the statutory maximum criminal penalty? The Supreme Court has not yet answered that question.").

10

I do not deny that the majority's reading of the prior-conviction exception — prohibiting a sentencing court from applying a recidivism statute and finding a fact inconsistent with a prior conviction — is a reasonable interpretation.[2] Under AEDPA, that the majority's reading was reasonable does not *ipso facto* render all other readings patently unreasonable. *See id.* (noting that, under AEDPA, just because an appellate court's own interpretation of the prior-conviction exception is reasonable does not mean that the state court's reading was unreasonable). "Because AEDPA authorizes federal courts to grant relief only when state courts act unreasonably, it follows that 'the more general the rule' at issue — and thus the greater the potential for reasoned disagreement among fair-minded judges — 'the more leeway state courts have in reaching outcomes in case-by-case determinations." *Renico*, 130 S. Ct. at 1864 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In my view, the prior-conviction exception is sufficiently general and undefined, such that we must, under AEDPA, defer to the

---

[2] I concede that the state court's decision in this case produced a seemingly inequitable result. We have recognized that a guilty plea binds a defendant "to the accuracy of the facts set forth in the indictment." *United States v. Parker*, 874 F.2d 174, 177 n.1 (3d Cir. 1989). The state court's determination would appear to run counter to this principle because Garrus was not held to the facts he pled to as part of the judicial process related to his 1997 burglary conviction. However, *Almendarez-Torres* simply treats recidivism differently. While there is no doubt that the majority's moral compass is well-aligned, morality cannot trump our duty to faithfully apply Supreme Court precedent.

11

state court. Given the logic of *Almendarez-Torres* and the fact that the Supreme Court has yet to clarify the scope of the prior-conviction exception, I simply cannot subscribe to the majority's finding that the state court's decision here was objectively unreasonable.

A few additional points bear mentioning. First, the majority opinion suffers from an internal inconsistency. Relying as it does on *Apprendi*, a case founded on the Sixth Amendment right to a jury trial, one would expect the majority to require that a jury determine whether or not Garrus's prior conviction for burglary qualifies as a crime of violence. Yet the majority does the opposite, requiring that the judge determine that Garrus's prior conviction was necessarily *not* a crime of violence.

Second, the majority notes that "[n]o existing precedent so much as hints that [the state court's] paradoxical interpretation of *Apprendi* might be reasonable." (Majority Op. at 20.) This point suffers from two flaws. One could easily reverse the logic of this statement and assert that no Supreme Court precedent suggests that the majority's interpretation is the only reasonable interpretation. Under AEDPA, that is sufficient to uphold the state court's determination.

More importantly, the proposition is simply inaccurate. The majority makes clear that it is troubled by the fact that Garrus pled guilty to second degree burglary only to have a judge find facts years later inconsistent with that prior conviction and without affording Garrus procedural safeguards. In *United States v. Santiago*, 268 F.3d 151 (2d Cir. 2001), then-Judge Sotomayor, writing for the court, addressed whether the requirement under the federal

12

recidivism statute, the Armed Career Criminal Act, that the defendant have three predicate convictions "committed on occasions different from one another," is a factual issue that must be submitted to a jury under *Apprendi*. *Id.* at 152. In resolving the issue in the negative, Judge Sotomayor stressed that courts make determinations all the time in the context of recidivism for which the *Apprendi* procedural safeguards do not attach. *See id.* at 156 ("The determination of 'the fact of a prior conviction' implicitly entails many subsidiary findings, not the least of which is that the defendant being sentenced is the same defendant who previously was convicted of those prior offenses, a fact that could be quite controversial indeed. Determination of this question would not necessarily come with the 'procedural safeguards' noted in *Apprendi*."). Judge Sotomayor went on to conclude:

> In short, we read *Apprendi* as leaving to the judge, consistent with due process, the task of finding not only the mere fact of previous convictions but other related issues as well. Judges frequently must make factual determinations for sentencing, so it is hardly anomalous to require that they also determine the 'who, what, when, and where' of a prior conviction.

*Id. Santiago* refutes the majority's unyielding interpretation of the phrase "the fact of a prior conviction," which is even more meaningful considering that *Santiago* was not a case decided under the highly deferential AEDPA framework.

13

Finally, there is little doubt that *Almendarez-Torres*'s continuing vitality is in jeopardy. *See Shepard v. United States*, 544 U.S. 13, 27-28 (2005) (Thomas, J., concurring) ("*Almendarez-Torres* . . . has been eroded by this Court's subsequent Sixth Amendment jurisprudence, and a majority of the Court now recognizes that *Almendarez-Torres* was wrongly decided. . . . [I]n an appropriate case, this Court should consider *Almendarez-Torres*' continuing viability."). However, we must apply *Almendarez-Torres* until the Supreme Court holds otherwise. *See Hohn v. United States*, 524 U.S. 236, 252-53 (1998) ("Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality."); *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").

For these reasons, I respectfully dissent.

14